JUDGE SCHEINDLIN

**14 CV 4356**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE THRUWAY EMPLOYEES LOCAL
72; JOSEPH E. COLOMBO, GEORGE E. SAVOIE,
DAVID M. MAZZEO, individually and on behalf of all
others similarly-situated,

                        Plaintiffs,

-against-

NEW YORK STATE THRUWAY AUTHORITY;
HOWARD P. MILSTEIN, individually and in his official
capacity as Chairman of the New York State Thruway
Authority; THOMAS J. MADISON, JR., individually and
in his official capacity as Executive Director of the New
York State Thruway Authority; THOMAS RYAN,
individually and in his official capacity ; JOSEPH BRESS,
individually and in his official capacity as Chief Negotiator
of the New York State Thruway Authority; HOWARD
GLASER, individually and in his official capacity as Director
of State Operations and Senior Policy Advisor to the
Governor of New York; DONNA J. LUH, individually and in
her official capacity as Vice-Chair of the New York State
Thruway Authority Board of Directors; E. VIRGIL CONWAY,
individually and in his official capacity as Board Member of
the New York State Thruway Authority; RICHARD N.
SIMBERG, individually and in his official capacity as Board
Member of the New York State Thruway Authority;
BRANDON R. SALL, individually and in his official capacity
as Board Member of the New York State Thruway Authority;
J. DONALD RICE JR., individually and in his official capacity
as Board Member of the New York State Thruway Authority;
JOSE HOLGUIN-VERAS, individually and in his official
capacity as Board Member of the New York State Thruway
Authority; JOHN F. BARR, individually and in his official
capacity as Director of Administrative Services of the New
York State Thruway Authority; JOHN M. BRYAN, individually
and in his official capacity as Chief Financial Officer and
Treasurer of the New York State Thruway Authority; and
DONALD R. BELL, individually and in his official capacity as
Director of Maintenance and Operations of the New York
State Thruway Authority,

                        Defendants.

**COMPLAINT**

Demand for Jury Trial

Civil Action No.:



RECEIVED
JUN 17 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## INTRODUCTION

1. This action is brought for monetary damages and injunctive relief pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff New York State Thruway Employees Local 72 brings this action on its own behalf and on behalf of its approximate 2600 members. The individual plaintiffs - union members whose employment was terminated as a result of the defendants' illegal conduct - bring this action on behalf of themselves and all others similarly-situated. Plaintiffs seek to redress defendants' intentional violation of their constitutional rights to freedom of speech, freedom of association, due process and equal protection of the law under the First, Fifth and Fourteenth Amendments to the United States Constitution, along with violations of Article I, § 17 of the New York State Constitution.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a). This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) in that one of the defendants resides in this district and a substantial part of the events or circumstances giving rise to the plaintiff's claims occurred within this district.

## PARTIES

4.  Plaintiff New York State Thruway Employees, Local 72 (hereinafter "the Union") is an employee organization affiliated with the International Brotherhood of Teamsters and represents, and is the collective bargaining agent for, approximately 2632 hourly employees of the defendant, throughout the state of New York.

5.  Plaintiff Joseph E. Colombo (hereinafter "Colombo") is a resident of New Windsor, New York and was employed by the Authority as a full time toll collector and was a member of the Union from on or about April 3, 2007 until on or about April 3, 2013, at which time his employment was terminated by the Authority.

6.  Plaintiff George E. Savoie (hereinafter "Savoie") is a resident of Amsterdam, New York and was employed by the Authority as a full time toll collector and was a member of the Union from on or about November 14, 2007 until on or about April 3, 2013, at which time his employment was terminated by the Authority.

7.  Plaintiff David M. Mazzeo (hereinafter "Mazzeo") is a resident of Troy, New York and was employed by the Authority as a full time toll collector and was a member of the Union from on or about July 7, 2011 until on or about April 3, 2013, at which time his employment was terminated by the Authority.

8.  Defendant New York State Thruway Authority (the Authority) is an independent public corporation created in 1950 by the New York State Legislature and was the employer of Plaintiffs Colombo, Savoie and Mazzeo from the dates of their hire until on or about April 3, 2012 and is the employer of the approximately 2632 hourly employees represented by the Union as set forth in ¶ 4 above.  The Authority has a

Division Headquarters located in Suffern, New York and has various facilities in Orange, Westchester and Rockland Counties.

9. Defendant Howard P. Milstein (hereinafter "Milstein") is, upon information and belief, a resident of the State of New York, and at times relevant herein was, the Chairman of the Authority. Defendant Milstein is sued in his official and individual capacities.

10. Defendant Thomas J. Madison, Jr. (hereinafter "Madison") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, the Executive Director of the Authority. Defendant Madison is sued in his official and individual capacities.

11. Defendant Thomas Ryan (hereinafter "Ryan') is, upon information and belief, a resident of the State of New York, and at all times relevant herein until, upon further information and belief, on or about January 15, 2013 or on or about January 31, 2013, was the Chief of Staff of the Authority. Defendant Ryan is sued in his official and individual capacities.

12. Defendant Joseph Bress (hereinafter "Bress") is, upon information and belief, a resident of Washington, DC, and at all times relevant herein was, the chief negotiator for the Authority for purposes of negotiating a collective bargaining agreement with the Union. Defendant Bress is sued in his official and individual capacities.

13. Defendant Howard Glaser (hereinafter "Glaser") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, the

director of State operations and senior policy advisor to New York State Governor Andrew M. Cuomo and, upon information and belief, directed and advised one or more of the Defendants herein regarding, among other things, the negotiation of a collective bargaining agreement with the Union. Defendant Glaser is sued in his official and individual capacities.

14.  Defendant Donna J. Luh (hereinafter "Luh") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, Vice-Chair of the Authority Board of Directors. Defendant Luh is sued in her official and individual capacities.

15.  Defendant E. Virgil Conway (hereinafter "Conway") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, a member of the Authority Board of Directors. Defendant Conway is sued in his official and individual capacities.

16.  Defendant Richard N. Simberg (hereinafter "Simberg") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, a member of the Authority Board of Directors. Defendant Simsberg is sued in his official and individual capacities.

17.  Defendant Brandon R. Sall (hereinafter "Sall") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, a member of the Authority Board of Directors. Defendant Sall is sued in his official and individual capacities.

18.  Defendant J. Donald Rice Jr. (hereinafter "Rice") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, a

member of the Authority Board of Directors. Defendant Rice is sued in his official and individual capacities.

19.     Defendant Jose Holguin-Veras (hereinafter "Holguin-Veras") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, a member of the Authority Board of Directors. Defendant Holguin-Veras is sued in his official and individual capacities.

20.     Defendant John F. Barr (hereinafter "Barr") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, Director of Administrative Services of the Authority. Defendant Barr is sued in his official and individual capacities.

21.     Defendant John M. Bryan (hereinafter "Bryan") is, upon information and belief, a resident of the State of New York, and at all times relevant herein was, Chief Financial Officer and Treasurer of the Authority. Defendant Bryan is sued in his official and individual capacities.

22.     Defendant Donald R. Bell (hereinafter "Bell") is, upon information and belief, a resident of the State of New York, and at all times from on or about March 2006 until on or about May 22, 2013 was Director of Maintenance and Operations of the Authority. Defendant Bell is sued in his official and individual capacities.

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs Columbo, Savoie and Mazzeo ("Named Plaintiffs") bring this action individually and on behalf of all other similarly-situated Union-represented

employees of the Authority subjected to termination or other adverse employment action as a result of the defendants' conduct. The class consists of individuals who:

    a.     were employees of the Authority as of April 3, 2013;

    b.     were members of the bargaining unit represented by the Union as of April 3, 2013; and

    c.     were terminated from their permanent positions as part of the course of illegal conduct at issue herein, or have been bumped, demoted, forced into early retirement or otherwise adversely affected by the terminations implemented by the defendants as alleged herein.

24.     The class that the Named Plaintiffs seek to represent ("Affected Employees") is so numerous that the joinder of all members in impracticable. Defendants have impacted approximately 153 Authority employees who were or remain members of the Union.

25.     There are questions of law or fact common to the class. Class members were all Union-represented employees of Defendant Authority who have been subjected to termination or other adverse action as a result of defendants' conduct. Defendants' actions have been generally applicable to the class.

26.     The Named Plaintiffs' claims are typical of the claims of the class members and the Named Plaintiffs will fairly and adequately protect the interests of the class.

27. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other methods of adjudicating the controversy. The prosecution of separate actions by the individual class members would create a risk of adjudications with respect to the individual members which would be dispositive of the interest of the other members.

## FACTUAL ALLEGATIONS

28. Pursuant to New York State Civil Service Law § 200, *et seq.*, commonly referred to as the "Taylor Law," Plaintiff Union is a certified exclusive representative for purposes of collective negotiations and contract administration for approximately 2632 Defendant Authority employees.

29. Pursuant to the Taylor Law, since approximately 1979, Defendant Authority and Plaintiff Union have been parties to numerous successive collective bargaining agreements detailing wages, hours, health insurance and other terms and conditions of employment of Union-represented Authority employees.

30. At all times mentioned herein, the defendants were, and, with the exception of defendants Ryan and Bell, are to the present time, responsible for the management of the Authority's workforce and/or negotiation of the terms of the collective bargaining agreement with the Union in furtherance of the Authority's purposes.

31. The most recent collective bargaining agreement between the Union and the Authority became effective on or about March 19, 2009 for a term ending on or about the close of business on June 30, 2012, but, pursuant to New York State Civil Service Law § 209-a.1.(e) (hereinafter the "Triborough Amendment"), continues in full force and effect to the present time and until a new agreement between the parties is negotiated.

32. The Union and the Authority commenced contract negotiations at a meeting in New York City on December 4, 2012.

33. On or about December 28, 2012, Defendant Madison sent an e-mail to the members of the Plaintiff Union threatening workforce layoffs, stating, among other things, that there is "the possibility of workforce layoffs," that the Authority "will continue to do everything we can to prevent the need for layoffs, but also understand that they are a real possibility at this time" and that "while a final decision regarding layoffs has not yet been made, it is necessary to begin planning for this contingency."

34. The aforementioned e-mail also informed Union members that, as part of the planning for layoffs, employees would be receiving a letter from the personnel bureau requesting verification of their seniority dates.

35. On or about January 3, 2013, Defendant Ryan stated, at an employee recognition ceremony, that layoffs could be averted if the Union came to terms with the Authority.

36. On or about January 29, 2013, Defendant Madison sent out another e-mail stating that "we must implement a workforce reduction plan now."

37. On or about March 8, 2013, Defendant Madison sent out yet another e-mail to the Union members indicating that layoffs are scheduled to become effective the first week of April. Madison further stated that, "It is especially troubling to consider that these layoffs could be avoided" and "the Authority has reached out frequently to your union representatives and urged them to partner with us...". Madison closed the email by saying: "I understand the impact layoffs will have on affected individuals, their families, and our entire organization, and I sincerely hope we can partner with union representatives to avoid them."

38. There was no threat of layoffs to the Union by the Authority and individual Defendants prior to the commencement of negotiations on December 4, 2012, and thereafter the threats set forth in ¶¶ 33-37 above were made and the threat that layoffs would take place on April 3, 2013 was communicated to the Union by the Authority and individual Defendants.

39. From at least December 4, 2012 forward, the Authority and individual Defendants demanded that the Union grant concessions to the Authority of its members' rights under the collective bargaining agreement which became effective on or about March 19, 2009, such concessions totaling approximately $20 million in savings to the Authority annually.

40. The Authority and individual Defendants demanded, in particular, that the Union grant concessions to the Authority of its members' rights relative to health benefits enjoyed by Union members pursuant to the aforementioned collective bargaining agreement.

41.     In an impermissible effort to coerce the Union into giving up its members' contract rights the Authority and individual Defendants threatened that if the Union did not agree to the concessions demanded, the Authority would terminate the employment of Union members.

42.     When the Union declined to grant the contract concessions demanded by the Authority and individual Defendants, the Authority and individual Defendants carried out the aforementioned threats and terminated 153 Union members on or about April 3, 2013.

43.     Upon information and belief, Authority members, including those represented by the union, receive the same health insurance, retirement, and leave benefits as the Authority's non-union employees.

44.     Although the Authority's workforce is comprised of both union and non-union members, defendants directed their demands for concessions and threats of termination if said concessions were not granted solely to union-represented employees.

45.     Although the Authority's workforce has both union and non-union members, the defendants intentionally singled out only union members for layoffs.

46.     The employees represented by the Union, were intentionally targeted for layoffs by the defendants when the Union refused to agree to certain concessions sought by the defendants during contract negotiations.

COUNT ONE

47.     The plaintiffs repeat and reallege the allegations set fourth in paragraphs

1-46 above.

48. At all times mentioned herein, the Union has been a duly recognized and certified negotiating representative for a negotiating unit of employees of the Authority.

49. At all times mentioned herein, the Union has been a party to collective bargaining agreements negotiated and entered into with the Authority.

50. The First Amendment of the United States Constitution protects plaintiffs' constitutional rights to freedom of speech and freedom of association free from reprisal.

51. The Fourteenth Amendment to the United States Constitution makes the First Amendment applicable to the states, including New York.

52. Pursuant to Article 14 of the New York State Civil Service Law (New York's Public Employees Fair Employment Act, commonly referred to as the "Taylor Law"), the Union is not required to grant any concessions of their members' rights under their collective bargaining agreements.

53. In order to coerce the Union into giving up its Taylor Law rights to negotiate, the defendants threatened that if the Union did not agree to the concessions demanded, the defendants would terminate the employment of Union-represented Thruway Authority employees.

54. When the Union declined to grant the contract concessions demanded by the defendants, the defendants carried out their threats of terminations. Those terminations took effect in early April, 2013 and resulted in approximately 153 Union employees being terminated, and other employees demoted, forced into early retirement or otherwise adversely affected.

55. Although the Authority's work force has both union and non-union members, the defendants intentionally directed their demands for concessions, and their corresponding threats of termination if their concessions were not granted, solely to union employees.

56. Although the Authority has both union and non-union members, the defendants intentionally singled out union members for termination.

57. The terminations ordered by the defendants have been intentionally directed against Thruway Authority union members because of their union membership.

58. The defendants violated Plaintiffs' right to free speech, including the right to associate, while acting under color of state law.

59. Defendants Milstein, Madison, Ryan, Bress, Glaser, Luh, Conway, Simberg, Sall, Rice, Holguin-Veras, Barr, Bryan and Bell have been the decision-makers for Defendant Thruway Authority with respect to the collective bargaining agreement demands involving Defendant Thruway Authority and the Union and employee terminations.

60. Defendants Milstein, Madison, Ryan, Bress, Glaser, Luh, Conway, Simberg, Sall, Rice, Holguin-Veras, Barr, Bryan and Bell are also responsible for the Thruway Authority's work force.

61. Upon information and belief, Defendant Bress is the representative for negotiating collective bargaining agreements between the Authority and the Union.

62. The defendants' conduct was intended to interfere with the plaintiffs' exercise of their rights of freedom of association and freedom of speech, as guaranteed

by the First and Fourteenth Amendments to the United States Constitution.

63. Defendants' conduct violated the rights of the plaintiffs to seek union representation, to join their respective unions and to participate in union activities, without reprisal, as guaranteed by the First and Fourteenth Amendment rights to freedom of speech and freedom of association.

64. Defendants' conduct has caused impermissible penalty to the plaintiffs for exercising their First and Fourteenth Amendment rights to seek union representation and to join, support and participate in a union.

65. Defendants' conduct was taken under color of state law and deprived the plaintiffs of their constitutional rights to freedom of speech and freedom of association, as guaranteed by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983.

66. Defendants intended to violate the plaintiffs' constitutional rights, knew their actions violated the plaintiffs' constitutional rights and/or acted with reckless disregard for whether their actions violated the plaintiffs.

67. The plaintiffs have suffered and will in the future suffer economic loss as a result of defendants' impermissible conduct.

68. The plaintiffs have suffered and will in the future suffer emotional distress as a result of defendants' impermissible conduct.

69. Defendants acted intentionally and in wanton and reckless disregard of the plaintiffs' constitutional rights.

## COUNT TWO

70. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

71. Defendants violated the plaintiffs' right of association by treating them differently than other similarly situated non-union public employees.

72. Defendants' decision to terminate only employees who are members of unions was arbitrary, irrational and/or undertaken in violation of the Constitution.

73. There was no basis for the decision to target plaintiffs for termination from other similarly situated public employees except for union status.

74. Defendants acted in their official capacities in ordering the terminations and forcing demotions and early retirement of the plaintiffs for arbitrary, irrational and/or constitutionally impermissible reasons.

75. The actions of defendants were taken under color of state law and deprived the plaintiffs of their rights to substantive due process and equal protection under the First, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983.

76. The plaintiffs have suffered, and will in the future suffer, harm as a result of defendants' unlawful conduct.

77. Defendants' actions were taken for an improper purpose and, being without a rational basis, violated the plaintiffs' right to equal protection of the laws and substantive due process of law guaranteed under the Fourteenth Amendment.

## COUNT THREE

78.     Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

79.     The defendants have ordered terminations of the plaintiffs and have subjected the plaintiffs to adverse employment action.

80.     Since the defendants have failed to set forth a rational basis for their actions, were acting without foundation under New York State law and in violation of the right to organize and to bargain collectively as set forth under Article I, §17 of the New York State Constitution, plaintiffs are entitled to an order declaring their termination of employment by defendants as unlawful.

81.     The plaintiffs have suffered, and will in the future suffer, irreparable harm as a result of defendants' conduct.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiffs demand that judgment be entered against the defendants and request the following relief:

1. That the Court certify the Named Plaintiffs' claims in this action as a class action on behalf of the Named Plaintiffs and all individuals similarly situated;

2. Declare and adjudge that the defendants violated the plaintiffs' constitutional rights to freedom of speech and association;

3. Declare and adjudge that the defendants violated the plaintiffs'

constitutional right to equal protection of the laws;

4. Declare and adjudge that the defendants violated the plaintiffs' right to organize and to bargain collectively under Article I, §17 of the New York State Constitution;

5. Order that the Named Plaintiffs and Affected Employees be reinstated to their former positions;

6. Award the Named Plaintiffs and Affected Employees economic and emotional damages, as well as punitive damages;

7. Attorneys' fees and costs of this action pursuant to 42 U.S.C. §1988; and

8. Such other and further relief as the Court may deem just, proper and equitable.

RESPECTFULLY SUBMITTED
THE NAMED PLAINTIFFS, and all others similarly situated

By: _____
Gregg D. Adler Bar #GA0569
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821
gdadler@lapm.org

June 16, 2014